IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DEBRA BROWN,

Plaintiff,

-vs-                                        CASE NO.:  6:14-CV-610-ORL-31-KRS

NRA GROUP, LLC,

Defendant.
_____/

## PLAINTIFF, DEBRA BROWN'S, MOTION FOR
## SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

### Plaintiff's Motion for Partial Summary Judgment

Plaintiff, DEBRA BROWN, by and through her undersigned counsel and pursuant to Fed. R. Civ. P. 56(a), hereby moves this Court for summary judgment in her favor against Defendant, NRA GROUP, LLC, as to the issue of liability and damages on Count I (Violation of the TCPA) of Plaintiff's Complaint.

The record shows, respecting the matters set forth in the Complaint, that no genuine issues of material fact remain affecting Defendant's liability and that the Plaintiff is entitled to judgment and damages as a matter of law on Count I.

For the reasons contained herein and in the incorporated memorandum of law, Plaintiff respectfully requests that the Court grant this motion and enter summary judgment on her behalf.

1

Counsel certifies pursuant to Local Rule 3.01(g) that he had no obligation to consult with Defendant's counsel prior to filing this motion.

## Plaintiff's Memorandum of Law and Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment

**I.     Introduction**

This action arises from multiple calls made by Defendant to Plaintiff's cellular telephone using an automated dialing system, a predictive dialer, and/or a dialing system that used an artificial or prerecorded voice (hereinafter "autodialer calls") as those terms are used in 47 U.S.C § 227(a)(1) and 47 U.S.C. § 227(b)(1)(A).   Plaintiff has alleged that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. in making these calls. There is no dispute in this case that during the period of September 20, 2014 through January 4, 2014, Defendant made thirty-five (35), non-emergency, autodialer calls to Plaintiff's cellular telephone number without Plaintiff's "prior express consent."   There is also no dispute that Defendant made such autodialer calls willfully or knowingly.   Accordingly, there are no genuine issues of material fact relative to the thirty-five (35) autodialer calls Defendant did make to Plaintiff's cellular telephone number, or relative to any defense to said violation of the TCPA.   In support of this Motion, Plaintiff submits the following:

1.     Plaintiff's Affidavit with exhibits, dated December 18, 2014 ;

2.     Plaintiff's MetroPCS Subscriber Record;

3.     Plaintiff's MetroPCS "Summary" of Calls from Defendant;

4.     Plaintiff's MetroPCS Call Detail Reports;

5.     Transcript of Recorded Call dated October 25, 2013;

6.     Transcript of Recorded Call dated November 5, 2013;

2

7.      Transcript of Recorded Call dated November 8, 2013;

8.      Transcript of Recorded Call dated January 8, 2014;

9.      Deposition of Steven Kusic dated October 10, 2014, with attached exhibits, **(with its attached exhibits 4, 5, 12 through 18 removed pursuant to the parties' *Joint Confidentiality Stipulation);***

10.     Defendant's Responses to Plaintiff's First Set of Interrogatories dated August 25, 2014;

11.     Defendant's Responses to Plaintiff's Second Set of Interrogatories dated November 17, 2014;

12.     Defendant's Responses to Plaintiff's Request for Admissions dated August 27, 2014;

13.     Defendant's Account Notes/Fact Sheets (Redacted);

14.     Deposition of Charlene Sarver dated December 8, 2014, with attached exhibits, **(with its attached exhibits 17 through 18 removed pursuant to the parties' *Joint Confidentiality Stipulation);***

Plaintiff is entitled to summary judgment as a matter of law as to Defendant liability for violating the TCPA, and for damages, at this time, on the thirty-five (35) known autodialer calls Defendant has conceded it made to Plaintiff's cellular telephone number during the period of September 20, 2014 through January 4, 2014.

## II.    Statement of Material Facts

1.    Plaintiff, Debra Brown, is a natural person and is the owner, regular user, carrier and possessor of a MetroPCS cellular telephone with the assigned telephone number (321) 215-5734. (Plaintiff Affidavit, ¶¶ 1-3).

2.    Plaintiff has had the cellular telephone number (321) 215-5734 as far back as December 21, 2012, at which time the cellular phone number was activated and assigned to Plaintiff, and at all times material thereto since, has been financially responsible for same. (See Plaintiff Affidavit, ¶ 3; MetroPCS Subscriber Record – which is attached to Plaintiff's Affidavit as *Exhibit "1"*).

3.    Defendant is a debt collector. (Depo. S. Kusic, p. 13). It made calls to Plaintiff's cell phone number on an account/debt owed by another person, a "Brandon B_____." (Depo. S. Kusic, p. 11).

4.    The debts of "Brandon B_____" in question concerned services rendered on or about January 5, 2013 and January 31, 2013 to B_____. (Depo. S. Kusic, pp. 14 & 15).

5.    Defendant placed telephone calls using an automatic telephone dialing system, a Mercury Predictive Dialer, in predictive mode, to Plaintiff's cellular telephone (321) 215-5734 on at least thirty-five (35) occasions during the time period relevant to this action, which is September 20, 2013 through January 8, 2014. (Plaintiff Affidavit, ¶¶ 4-7; see also, MetroPCS Call Detail Reports – which are attached to Plaintiff's Affidavit as *Exhibit "2"*, and Defendant's

Call Record summary – which is detailed in Defendant's Responses to Plaintiff's Second Set of Interrogatories Numbers 1 & 2[1]).

6.      Defendant has conceded that all of the calls it made to Plaintiff's cellular telephone number during the period of September 20, 2013 through January 8, 2014 were made with an automatic telephone dialing system, a Mercury Predictive Dialer, and each of said calls were made in predictive mode.   (Defendant's Responses to Plaintiff's Second Set of Interrogatories Numbers 1 & 2; Depo. S. Kusic, pp. 26-28; Depo. Sarver, pp. 15 & 18).

7.      Defendant predictive dialer calls were made as part of two separate campaigns, "Dialer Campaigns", which are pre-programmed dialer campaigns.  (Depo. Sarver, p. 11 & 18).

8.      The Defendant's dialer makes outbound calls without human intervention.  (Depo. Sarver, p. 21).  The first time a collector from Defendant actually knows that its predictive dialer has made an outbound calls is when the account "pops up on their screen" and/or when they hear a tone in their headset.   (Depo. Sarver, pp. 21-22).  It is not until a call has been made by Defendant's predictive dialer, and then only after the call has been answered that a collector even knows that a call has been made.  (Depo. Sarver, p. 22).

9.      The reason Defendant uses its predictive dialer is because it can call more numbers than collectors can call manually.  (Depo. Sarver, p. 22).

10.      Defendant has programmed its predictive dialer to automatically hang-up when one of its outbound calls is answered by an answering machine.  (Depo. Sarver, p. 31).

---

[1] Defendant's concedes it only made 31 calls with its Mercury Predictive Dialer in predictive mode, and appears to be omitting 4 calls that are reflected in Plaintiff's MetroPCS cell phone records as occurring on 11/5/13 (9:51:50 am, 22 seconds); 11/8/13 (8:56 am, 42 seconds); 11/19/13 (8:45:19 am, 22 seconds); and 1/8/14 (10:45:12 am, 58 seconds).  However, it is noteworthy that in Defendant's account notes, calls are shown as having been made by Defendant on 11/5/13 at 9:53 am, 11/8/13 at 8:58 am, 11/19/13 at 8:47 am, and on 1/8/14 at 10:48 am.

11.     Even the selection of accounts to call, which are pre-loaded into the predictive dialer campaigns, is done automatically.  (Depo. Sarver, p. 33).

12.     The aforesaid calls to Plaintiff's cellular telephone came from Defendant's telephone number 800-360-4319.   (Plaintiff Affidavit, ¶ 6; see also, MetroPCS Call Detail Reports – which are attached to Plaintiff's Affidavit as *Exhibit "2"*; Defendant's Responses to Plaintiff's Second Set of Interrogatories Numbers 1 & 2).

13.     Plaintiff does not know the person "Brandon B_____", the true account holder and debtor of Defendant, for which Defendant's calls to Plaintiff's cellular telephone were placed.  (Plaintiff Affidavit, ¶¶ 9-10).

14.     Plaintiff is not related to "Brandon B_____," does not live with "Brandon B_____," has never lived with "Brandon B_____," and has never known "Brandon B_____." (Plaintiff Affidavit, ¶¶ 9-11).

15.     Plaintiff has never shared cellular telephone number with "Brandon B_____." (Plaintiff Affidavit, ¶ 12).

16.     All of Defendant's predictive dialer calls "…were made in an attempt to reach Brandon B_____." (Defendant's Responses to Plaintiff's First Set of Interrogatories Number 7).

17.     All of Defendant's autodialer calls made to Plaintiff's cellular telephone number were made relative to Defendant's account with a man named "Brandon B_____." (Defendant's Responses to Plaintiff's First Set of Interrogatories Number 7).

18.     Defendant further concedes that there never existed any debtor-creditor relationship between Defendant and Plaintiff, and that Plaintiff is not Defendant's accountholder

6

for the subject account.   (Defendant's Responses to Plaintiff's First Set of Interrogatories Number 7; Depo. S. Kusic, pp. 11-13, 17).

19.    Defendant has no document in its possession signed by Plaintiff giving permission to call her cell phone number. (Depo. S. Kusic, p. 17).

20.    Defendant has no evidence that Plaintiff ever verbally gave permission to Defendant (or Defendant's creditor) to call her cellular telephone number. (Depo. S. Kusic, p. 17).

21.    As to the cellular telephone number to call for this debt, Defendant relied solely on the information provided to it by Defendant's creditor. (Depo. S. Kusic, pp. 17-18).

22.    Upon receiving the assignment to collect the debt in question from the creditor, Defendant performed a cell phone "scrub" which identified the telephone number of Plaintiff as a cell phone number. (Depo. S. Kusic, pp. 18-19).

23.    Prior to initiating calls to Plaintiff's cell phone number on the account/debt, Defendant did nothing to determine whether the telephone number in question actually belonged to the actual debtor, "Brandon B_____," or to someone else. (Depo. S. Kusic, pp. 18-19).

24.    Plaintiff, Debra Brown, is not indebted to Defendant, is not "Brandon B_____," and never provided her prior express consent to Defendant, any other predecessor or successor in interest to Defendant, or to Defendant's creditor, to contact Plaintiff on her cellular telephone number (321)215-5734. (Plaintiff Affidavit, ¶¶ 14-19; Depo. S. Kusic, pp. 12-13, 17).

25.    Defendant has conceded that Plaintiff, herself, has never given her prior express consent to Defendant to be called by Defendant on Plaintiff's cellular telephone number, as the

cell phone number in question was allegedly believed to be the cellular telephone number of "Brandon B_____." (Depo. S. Kusic, pp. 12-13, 17).

26.    A summary table culled from the Metro PCS cell phone records, attached hereto as **Exhibit "A"** to this Motion, shows that Defendant made a total of thirty-five (35) outgoing calls to Plaintiff's cellular telephone number, and all calls came from the Defendant's Caller ID/Telephone Number 800-360-4319.  (See **Exhibit "A"**).  Of those thirty-five (35) total calls, thirty-three (33) calls were "Answered," and two (2) calls were "Not Answered" by Plaintiff. (See **Exhibit "A"**).

27.    Additionally, **Exhibit "A"** reflects that Plaintiff made nine (9) calls to Defendant to attempt to get Defendant's calls to stop, five (5) of which were "Answered" by Defendant. (See **Exhibit "A"**).

28.    Defendant's own recordings of calls/conversations between Defendant and Plaintiff reveal the following:

   a. On October 25, 2013, Plaintiff telephoned Defendant, and advised Defendant's agent that her name was Debra Brown, that she told Defendant months and months ago that "Brandon" does not live here and if Defendant calls again she was going to call a lawyer (See **Exhibits "B"**).   This conversation lasted 1 minute and 10 seconds per Plaintiff's MetroPCS records.  (See **Exhibit "A"**).

   b. On November 5, 2013, Plaintiff answered an incoming predictive dialer call from Defendant, which lasted 22 seconds, and told the Defendant's agent, *"Fuck you."* (See **Exhibits "C" and "A").**

8

    c.  On November 8, 2013, Plaintiff answered an incoming predictive dialer call from Defendant, which lasted 42 seconds, and told Defendant's agent, *"You know what? I have told you people a hundred times he is not at this number. You keep calling this number and disturbing me at work, my lawyer is going to contact you because he does not have this number and he hasn't had it for over a year"*, and further told Defendant, *"I don't want to hear what you have to say, stop calling my number."* (See **Exhibits "D" and "A"**). Plaintiff was informed by Defendant's agent that all she "…had to say is it is the wrong number and we will take it off." (See **Exhibit "D"**).

    d.  On January 8, 2014, Plaintiff answered an incoming predictive dialer call from Defendant, which lasted 58 seconds, pressed Defendant's agent for any information as to why they were calling her number for "Brandon," and told Defendant, *"Okay, if you can't give me any information then you need to stop calling my number because I don't know who the hell he is!"* (See **Exhibit "E"**).

29.    Defendant made twenty-two (22) of its thirty-five (35) predictive dialer calls <u>after</u> the October 25, 2013 conversation in which Plaintiff told Defendant that "Brandon" does not live there and to stop calling. (See **Exhibit "A"**).

30.    On November 8, 2013, Defendant documented its own account notes with the notation "TM/WN," which means "telephoned mobile, wrong number." (Depo. Kusic, p. 24; Depo. Sarver, p. 30).

31.    None of the Defendant's predictive dialer autodialer calls made to Plaintiff's cellular telephone number were made for emergency purposes.  (Defendant's Answers to Requests for Admissions, No. 13).

### III.    Legal Standard

Under Fed. R. Civ. P. 56(a), summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 *1986) and *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).  A genuine issue exists on if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248.  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)(emphasis in original).

Once a party makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The evidence must be significantly probative to support the claims.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-249 (1986).  However, there must be a conflict in substantial evidence to pose a jury question.  *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

IV.    **Argument and Citation of Authority**

The Defendant placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system without the prior express consent of the Plaintiff, in violation of the TCPA, 47 U.S.C. § 227(b)(1(A)(iii).   Consequently, Plaintiff is entitled as a matter of law to  summary judgment as to the Defendant's liability and for damages on Count I of the Complaint, for Defendant's violations of the TCPA.

A. *The TCPA*

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii).   Enforcement of this rule is assured through a private right of action created by the TCPA, which provides that a person may bring "an action to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B).   In addition, "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3)(C).

In this case, Defendant made thirty-five (35) automatic telephone dialing system calls to Plaintiff's cellular telephone number during the period of September 20, 2013 through January 8, 2014. Accordingly, there is no dispute that Defendant placed numerous calls using an automated telephone dialing system (i.e. a predictive dialer) to the cellular telephone of Plaintiff, the

subscriber, called party, owner and regular user of the cellular telephone in question.  See *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681 (N.D. Ill. 2011); *Swope v. Credit Management, LP,* 2013 WL 607830 (E.D. Mo. Feb. 19, 2013); *Page v. Regions Bank*, --- F.Supp.2d ---, 2012 WL 6913593 (N.D. Ala. Aug. 22, 2012).

B.  *Lack of Prior Express Consent of the Plaintiff*

The only affirmative defenses to a violation of the TCPA is if the calls were made with the "prior express consent" of the called party, or if the calls were made for "emergency purposes."  47 U.S.C. § 227(b)(1)(A)(iii).  Defendant has admitted that none of its calls were made for "emergency purposes."  (Defendant's Answers to Requests for Admissions, No. 13).

As for "prior express consent," where a person first provides her or his express consent to receive telephone calls on a cellular telephone number, a caller may raise this defense to a charge of violating the TCPA.  However, this defense is not available to Defendant, because Plaintiff never provided her "prior express consent."  In order for the defense of "prior express consent" to apply in the context of the calls that were made to Plaintiff's cellular telephone here (which said calls were debt collection calls on an account of another), the called party (here Plaintiff) must have provided her number to the calling party during the transaction that resulted in the debt owed.  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); see also, *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564-65, 2008 WL 65485 (Jan. 4, 2008).

The TCPA gives the Federal Communications Commission ("FCC") the authority to prescribe regulations and implement the TCPA's provisions.  47 U.S.C. § 227(b)(2).  On January

4, 2008, the FCC adopted Declaratory Ruling 07-232, which stated, in pertinent part, as follows:

"10. We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed. To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent." *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564-65, 2008 WL 65485 (Jan. 4, 2008). Plaintiff never had any business dealings with Defendant and never gave her cellular telephone number, and her prior express consent, to the Defendant. (Depo. S. Kusic, pp. 11 – 13, 17; Plaintiff's Affidavit, ¶¶ 9-12).

Consequently, it is a logical impossibility for the Plaintiff to have ever provided her prior express consent to Defendant to call this number, when she is not Defendant's account holder, and not the debtor in question. Plaintiff is not "Brandon B_____," and has no relationship to him. Accordingly, the defense must fail as a matter of law. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014); *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637 (7th Cir. 2012); *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1321 (S.D. Fla. 2012); *Buslepp v. B & B Entertainment, LLC*, 2012 WL 4761509 (S.D. Fla. 2012); and *Fini v. Dish Network, LLC*, Case No.: 6:12-cv-690-Orl-22TBS, [Doc. 75] Order (M.D. Fla. March 6, 2013).

Defendant has not (because it cannot) provide any evidence whatsoever that Plaintiff provided her prior express consent for the Defendant, or any other predecessor and/or successor

in interest to contact Plaintiff in this matter.  (Depo S. Kusic, pp. 11 – 13, 17).  Because Plaintiff is not "Brandon B_____", does not know him, has never had any relationship with him, has never lived with him, and owes no debt to Defendant whatsoever, it cannot even be suggested that Defendant had the consent of Plaintiff to call her cellular telephone, and any bald assertions to the contrary are insufficient to prevent summary judgment.  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); (See *American States Ins. Co. v. Lanier Business Products*, 707 F. Supp. 494 (MD Ala. 1989) (Bald assertions of fact without documentary support are insufficient to defeat a motion for summary judgment).  If Defendant maintains that it had the prior express consent of "Brandon B_____", the actual account holder and actual debtor, such a position is also inadequate as a matter of law to defeat summary judgment, because the party actually called by Defendant was Plaintiff, not "Brandon B_____."  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 2012 WL 1448444 (S.D. Fla. 2012); *Buslepp v. B & B Entertainment, LLC*, 2012 WL 4761509 (S.D. Fla. 2012).

## C. *Plaintiff was the Called Party and Recipient of Defendant's Autodialer Calls*

The use of "called party" in 47 U.S.C. § 227(d) in references to calls made to a cellular telephone number (as opposed to a residence)"…clearly refers to the actual recipient of the call rather than the intended recipient." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014).  Here, contrary to any possible assertion by Defendant otherwise, Plaintiff was the "called party", not the apparent account holder/debtor of Defendant, "Brandon B_____."  *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014);;

14

*Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316 (S.D. Fla. 2012), *Soppet v. Enhanced recovery Co.*, 2011 WL 3704681 (N.D. Ill. 2011); *D.G. v. William W. Siegal & Assocs.*, 791 F.Supp.2d 622 (N.D. Ill. 2011); *Swope v. Credit Management, LP*, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013); *Page v. Regions Bank*, --- F.Supp.2d ---, 2012 WL 6913593 (N.D. Ala. Aug. 22, 2012); *Manno v. Healthcare Revenue Recovery Group, LLC*, --- F.R.D. ---, 2013 WL 1283881 (S.D. Fla. Mar. 26, 2013); *Mais v. Gulf Coast Collection Bureau, Inc.*, --- F.Supp.2d ---, 2013WL 1899616 (S.D. Fla. May 8, 2013); and *Fini v. Dish Network, LLC*, Case No.: 6:12-cv-690-Orl-22TBS, [Doc. 75] Order (M.D. Fla. March 6, 2013).

In the absence of any agency relationship between Plaintiff and "Brandon B_____," which there is none here, prior express consent must come from the current subscriber of the cellular telephone number, not the Defendant's former customer, who may or may not have been assigned the same cellular telephone number before it was assigned to Plaintiff on December 21, 2012. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014); *Sterling v. Mercantile Adjustment Bureau, LLC*, 11-CV-639, 2014 WL 1224604, *3-4 (W.D. N.Y. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1316, 1322 (S.D. Fla. 2012); and *Olney v. Progressive Cas. Ins. Co.*, 59 Communications Reg. (P & F) 1004, 2014 WL 294498, *6 (S.D. Cal. 2014). Accordingly, the Defendant has violated the TCPA with regard to its thirty-five (35) automatic telephone dialing system telephone calls to the Plaintiff's cellular telephone number without Plaintiff's prior express consent, and no defenses are available to it as a matter of law. This Court should grant partial summary judgment as to liability on Count I of Plaintiff's Complaint in favor of Plaintiff, with damages to be determined, on Count I, on the thirty-five (35) autodialer calls Defendant

made to Plaintiff's cellular telephone number over the relevant period of September 20, 2013 through January 8, 2014.

D. *Defendant's Mercury Predictive Dialer was/is an Automatic Telephone Dialing System Under the TCPA*

Summary judgment should be also entered in favor of Plaintiff on the issue that Defendant's Mercury Predictive Dialer is a dialing system covered by the TCPA. The TCPA gives the FCC the authority to prescribe regulations and implement the TCPA's provisions. 47 U.S.C. § 227(b)(2). In 2003, the FCC adopted rules addressing the technological advances made by the telemarketing industry. *See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 F.C.C. Rcd. 14014, 14017 ¶¶ 1–2, 2003 WL 21517853 (F.C.C. July 3, 2003) (*"2003 Report"* ). The FCC sought to ensure that consumers continued to receive the protection from unwanted solicitation calls that Congress intended in enacting the TCPA. *2003 Report* at 14017 ¶ 2. Recognizing the proliferation of predictive dialer use in telemarketing, the FCC in 2002 had invited comments on whether predictive dialers fall within the restrictions placed on ATDS's. *See 2003 Report* at 14090 ¶ 129.

According to the FCC, a predictive dialer is defined as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *2003 Report* at 14091 ¶ 131. Moreover, "[t]he hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, *or from a database of numbers." 2003 Report* at 14091 ¶ 131 (emphasis added). The FCC acknowledged that the "basic function" remained the same—namely, "the *capacity* to dial [phone] numbers [en masse] without human intervention" or oversight. *2003 Report* at 14092 ¶ 132. In 2008, the FCC issued a Declaratory

Ruling reaffirming that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling,* 23 F.C.C. Rcd. 559, 565 ¶ 12, 2008 WL 65485 (F.C.C. Jan.4, 2008) (*"2008 Declaratory Ruling"* ); see also, *Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012), *cert. denied,* --- U.S. ---, 133 S.Ct. 2361 (2013), *Swope v. Credit Mgmt., LP,* No. 12CV832, 2013 WL 607830 at 4 (E.D. Mo. Feb. 19, 2013), and *Vance v. Bureau of Collection Recovery, LLC,* No. 10-cv-06324, 2011 WL 881550 at 2 (N.D. Ill. March 11, 2011). FCC rulings concerning the TCPA have the force and effect of binding law, and district courts do not have the jurisdiction to review the validity of an FCC order. See *Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110 (11th Cir. 2014); 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a).

In *Echevvaria v. Diversified Consultant, Inc.,* 2014 WL 929275 (S.D. New York Feb. 28, 2014), the court had the opportunity to analyze a predictive dialer system, the LiveVox Predictive Dialer system, that was utilized by the defendant to make its autodialer calls to the plaintiff's cell phone number. The court concluded that that dialer system was an automatic telephone dialing system. *Id.* at *5-*7. Defendant's dialer system, which every representative of Defendant refers to as an "auto-dialer, functioned in the exact same manner as the dialer system functioned in the *Echevvaria* case. Defendant has conceded that all of the calls it made to Plaintiff during the period of September 20, 2013 through January 8, 2014, for both of its "Dialer Campaigns" were made by its Mercury Predictive Dialer in "predictive mode." The only time human intervention ever comes into play with this dialer is <u>after</u> the call is dialed, <u>after</u> the dialed call is answered, and <u>after</u> Defendant's collector is notified or "prompted" that a call has been

17

answered. (Depo. Sarver, pp. 21-22). Additionally, in *Hicks v. Client Services, Inc.*, 2009 WL 2365637 (S.D. Fla. June 9, 2009), the court ruled that the dialer system used, even though that defendant attempted to describe it as "non-predictive," was the type of device the FCC contemplated in its ruling on predictive dialers. *Id.* at *5.

Other recent orders from the Middle District of Florida have acknowledged the FCC's repeated rulings that predictive dialers are considered automatic telephone dialing systems. See *Fail v. Diversified Consultants, Inc.*, 2014 WL 257 4532, *2 (M.D. Fla. June 9, 2014); *Ayers v. Verizon Communications, Inc.*, 2014 WL 2574543, *2 (M.D. Fla. June 9, 2014); *Murray v. Diversified Consultants, Inc.*, 2014 WL 2574042, *2 (M.D. Fla. June 9, 2013) (each of the above cases citing to *Swope v. Credit Management, LP*, 2013 WL 607830, *4-*5 (E.D. Mo. Feb. 19, 2013); see also, *Smith v. MarkOne Financial, LLC*, No. 3:13-cv-933-J-32MCR, 2015 WL 419005, *2-*3 (M.D. Fla. Feb. 2, 2015).

Similar holdings have been reached in *Lardner v. Diversified Consultant, Inc.*, --- F. Supp. 2d ---, 2014 WL 1778960 (S.D. Fla. May 1, 2014)(finding that the predictive dialer system "qualifies as an ATDS under the statute because it automatically dials telephone numbers from a preprogrammed list." *Id.* at *5); see also, *Bianchi v. Bronson & Migliaccio, LLP,* Case 0:09–cv–61164–UU, May 27, 2010, D.E. 59 at 5 ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service, which calls debtors without any human intervention[.]"); *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir.2012); *Swope v. Credit Mgmt., LP,* Case No. 12CV832, 2013 WL 607830, at *4 (E.D.Mo. Feb. 19, 2013) (The FCC has twice "held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA, and that debt collectors are not exempt from the statute's

prohibitions."); *Vance v. Bureau of Collection Recovery, LLC,* No. 10–cv–06324, 2011 WL 881550, at *2 (N.D.Ill. Mar.11, 2011) ("[T]he FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); *Ortega v. Collectors Training Inst. of Ill.,* No. 09–21744–CIV, 2011 WL 241948, at *8 (S.D.Fla.Jan.24, 2011) (denying summary judgment because there was evidence that defendants used an "auto dialer system" and because Plaintiff heard a "robot voice" on the message); *Davis v. Diversified Consultants, Inc.,* 2014 WL 2944864, at *5-6 (D. Mass. June 27, 2014(holding that the LiveVox predictive system is an ATDS); *Sterk v. Path,* 2014 WL 2443785, at *4-5 (N. D. Ill. May 30, 2014)(granting partial summary judgment in favor of plaintiff on whether a text was sent with an ATDS); *Vance v. Bureau of Collection Recovery, LLC,* 2011 WL 881550, at *2 (N.D. Ill. 2011)(stating that "the FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA"); *Griffith v. Consumer Portfolio Serv., Inc.,* 838 F. Supp. 2d 723, 727 (holding that defendant's equipment was an ATDS based on dialer's ability to call numbers automatically from a list stored in a software file); *Moore v. Dish Network, LLC,* 2014 WL 5305960, *11-14 (N. D. W. Va. Oct. 15, 2014)(holding that defendant's dialer was a predictive dialer and an ATDS); *Prater v. Medicredit, Inc.,* 2014 WL 4652942, *4 (E.D. Mo. Sept. 18, 2014 (looking to the FCC rulings on predictive dialers, in part, to deny a defendant motion to stay); and *Hernandez v. Collection Bureau of America, Ltd.,* 2014 WL 4922379 (C.D. Cal. April 16, 2014)(finding that defendant's dialer was an ATDS because it had the ability to dial in predictive mode).

Defendant's Mercury Predictive dialer is a predictive dialer and an ATDS.  (Depo S. Kusic, pp. 26-28; Depo. Sarver, pp. 15 and 18).  It is a predictive dialer system that automatically

dials numbers from a preprogrammed list or campaign, it requires no human intervention to make such calls, and it is fully automatic, in every sense of the word, in its making outbound calls for its collectors. (Depo. Sarver, pp. 11,15,18,21-22) Each one of the thirty-five (35) calls in question in this case were made by Defendant to Plaintiff's cell phone number in "predictive mode." (Defendant's Responses to Plaintiff's Second Set of Interrogatories Numbers 1 and 2; Depo S. Kusic, pp. 26-28; Depo Sarver, pp. 15 and 18). Further, Defendant trains and instructs its collectors, and implements policies and procedures designed to be compliant with the TCPA, by removing numbers from its dialer when asked to stop calling. (Depo. S. Kusic, pp. 25). Accordingly, there is no dispute that Defendant's Mercury Predictive Dialer is an "automatic telephone dialing system" that is covered by the TCPA.

E. *Damages, and Treble Damages, Awardable Under the TCPA*

As for the damages awardable to Plaintiff under Count I, enforcement of the TCPA is assured through a private right of action created by the TCPA, which provides that a person may bring "an action to recover for actual monetary loss for such violation, or to receive $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(b)(3)(B). In addition, "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3)(C). Accordingly, if the Court determines that Defendant's autodialer calls made after October 25, 2013, (which is the date of the first recording, produced by Defendant, that Defendant documented that Plaintiff made Defendant aware that it was calling Debra Brown (and not Brandon B_____), it was calling the

wrong number, and to stop calling), were made willfully or knowingly by Defendant, then this Court may treble the monetary or statutory damages.

The TCPA does not define "willfully" and "knowingly." Although there is a split of authority as to what constitutes as willful or knowing, there is no disagreement among the Courts that in awarding treble damages, Courts have held that "the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Harris v. World Financial Network National Bank, et al.*, 867 F.Supp.2d 888 (E.D. Mich. 2012) *citing Alea London Ltd. v. Am. Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). Per Plaintiff's cell phone records, Defendant's dialer call log and account notes, twenty-two (22) of Defendant's thirty-five (35) predictive dialer calls were made by Defendant <u>after</u> the October 25, 2013 conversation in which Plaintiff told Defendant that "Brandon" does not live there and to stop calling. It is significant that not only did Defendant continue to make its calls after October 25, 2013, but continued making calls to Plaintiff despite Plaintiff telling Defendant again on November 8, 2013 (and arguably even a third time prior thereto on November 5, 2013). Defendant knew it was using a predictive dialer to make calls, and knew from the start it was calling a cell phone number. (Depo. S. Kusic, pp. 18-19; Depo. Sarver,p. 11, 18, 21-22).

Any variance, among Courts, as to treble damages under the TCPA concerns whether the definition of "knowing" requires the Defendant to know, or have reason to know, the conduct would violate the TCPA or, in the alternative, if merely knowing the impermissible communication occurred is enough. *See e.g Texas v. Am. Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D.Tex.2001) ("[t]he Federal Communications Commission has interpreted 'willful or knowing' under the Telecommunications Act (of which the TCPA is a part), as not requiring bad

21

faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute."); *Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2013 WL 1154206 at *7 (N.D.Ill. Mar.19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."); *Stewart v. Regent Asset Mgmt. Solutions,* No. 10–CV–2552, 2011 WL 1766018 at *7 (N.D.Ga. May 4, 2011); *Sengenberger v. Credit Control Svcs., Inc.,* No. 09 C 2796, 2010 WL 1791270 at *6 (N.D.Ill. May 5, 2010), *adhered to on reconsideration,* 2010 WL 6373008 (N.D.Ill. June 17, 2010).

Accordingly, if the Court determines that Defendant's autodialer calls made after October 25, 2013 were made willfully or knowingly by Defendant, then this Court may treble the monetary or statutory damages. *Harris v. World Financial Network National Bank, et al.,* 867 F.Supp.2d 888 (E.D. Mich. April 3, 2012); see also, *Moore v. Dish Network, LLC,* No. 3:13-CV-36, 2014 WL 5305960, *15 (N.D. W. Va. Oct. 15, 2014). At this time, Plaintiff seeks summary judgment on Count I (Violation of the TCPA) on damages at a minimum of $17,500.00 based on $500.00 per phone call made on the thirty-five (35) known calls made by Defendant to Plaintiff's cellular telephone number (i.e. 35 calls x $500.00 per call = $17,500.00); or alternatively, should the Court determine that the twenty-two (22) predictive dialer calls were made willfully or knowingly, then treble damages as to those twenty-two (22) calls. Should this Court find that Defendant willfully or knowingly violated the TCPA as to these twenty-two (22) calls, then applying treble damages to those twenty-two (22) calls, would yield the total sum of **$39,500.00 (i.e. $500.00 per 13 phone calls made before and up to 10/25/13, plus $1,500.00 per 22**

**phone calls made after 10/25/13 = $6,500.00 + $33,000.00 = $39,500.00).** Plaintiff hereby seeks summary judgment for statutory damages, including treble damages, in the amount of **$39,500.00.**

### V.     Conclusion

The Defendant placed telephone calls to the Plaintiff's cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice without the express consent of the Plaintiff, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiff seeks summary judgment on Count I (TCPA) of his Complaint on the thirty-five (35), non-emergency autodialer calls made to her cellular telephone number without Plaintiff's prior express consent. Based on the foregoing, Plaintiff respectfully requests that this Honorable Court grant her Motion for Summary Judgment on Count I, and award damages of up to either $500.00 per call for the thirty-five (35) calls (i.e. 35 calls x $500.00 per call = $17,500.00); or alternatively, treble damages of $1,500.00 per call for the twenty-two (22) calls made after October 25, 2013 the total sum of **$39,500.00 (i.e. $500.00 per 13 phone calls made before and up to 10/25/13, plus $1,500.00 per 22 phone calls made after 10/25/13 = $6,500.00 + $33,000.00 = $39,500.00),** and for such other and further relief as appears to this Court to be just and proper in the premises.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ___11th___ March, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants: Dale T. Golden, Esq. and Benjamin W. Raslavich, Esq., Golden Scaz Gagain, PLLC, 201 N. Armenia Ave., Tampa, FL 33609.

Michael J. Vitoria, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
MVitoria@ForThePeople.com
KReynolds@ForThePeople.com
Florida Bar #: 0135534
Attorney for Plaintiff