UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DEBRA BROWN,**

   **Plaintiff,**

**v.**                   Case No: 6:14-cv-610-Orl-31-KRS

**NRA GROUP, LLC,**

   **Defendant.**

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 23) filed by the Plaintiff, Debra Brown, the response (Doc. 32) filed by the Defendant, NRA Group, LLC ("NRA"), and the reply (Doc. 33) filed by Brown.

### I. Background

Between September 20, 2013, and January 8, 2014, NRA, a debt collection company, made 35 calls to Brown's cell phone number.[1] NRA was attempting to collect a debt from an individual named Brandon, who had no connection to Brown. Brown asserts, and NRA does not dispute, that on October 25, 2013 (and several times thereafter) she contacted the company and provided notice that it was calling a wrong number. Twenty-two of the 35 calls at issue were placed after October 25, 2013.

---

[1] The parties dispute the precise number of phone calls placed to Brown's number during this period. Brown's cell phone records show 35 such calls, but the Defendant only acknowledges 31. As NRA has not produced any evidence supporting its figure, the Court is obligated to find that 35 such calls were placed.

On April 18, 2014, Brown filed the instant suit, alleging that the calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I), the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55 *et seq.* (Count II); and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count III).  By way of the instant motion, Brown seeks summary judgment only as to Count I.

**II.     Legal Standards**

*A.    Summary Judgment*

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56.  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted).  Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### *B.     The TCPA*

The TCPA prohibits the making of any call to a cell phone number using an "automatic telephone dialing system" without the prior express consent of the party being called.[2]  47 U.S.C. § 227(b)(1)(A)(iii).   The term "automatic telephone dialing system" is defined by the Act as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers."  47 U.S.C. § 227(a)(1).   The TCPA provides a private right of action.   Individuals who receive more than one improper call within a 12-month period may seek injunctive relief and may recover up to $500 in damages for each violation or actual damages, whichever is greater.   47 U.S.C. § 227(c)(5).   If the court finds that the defendant willfully or knowingly violated the regulations prescribed under the TCPA, it may increase the damages award to up to three times the amount otherwise recoverable.   47 U.S.C. § 227(c)(5).

**III.     Analysis**

NRA argues that it did not violate the TCPA because the calls that were placed to Brown's cell phone line were not made by using an "automatic telephone dialing system" as required by the Act.[3]   NRA admits that the calls at issue here were placed via its "Mercury Predictive Dialer".  The Federal Communications Commission has consistently determined that predictive dialers constitute automatic telephone dialing systems for purposes of the TCPA, and this Court is bound by those determinations.   *See Walker v. Transworld Systems, Inc.*, 2015 WL 631390 at *3 (M.D.Fla. February 13, 2015) (citing cases).    Despite the name, NRA contends that the Mercury

---

[2] The statute contains an exception for emergency calls.

[3] NRA does not otherwise challenge Brown's assertion that its calls to her violated the Act.

Predictive Dialer is not a "predictive dialer" as that term is used by the FCC and therefore it is not an automatic telephone dialing system for purposes of the TCPA.

The FCC has described "predictive dialer" as:

> equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

*In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 (2003).  According to the FCC, predictive dialers generally do not rely on a random or sequential number generator to determine the numbers to dial.  Instead, in most cases, telemarketers program the numbers to be called into the equipment, after which the dialer calls the numbers at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.  *Id.*

The lack of random or sequential number generators has not stopped the FCC from concluding that predictive dialers qualify as automatic telephone dialing systems under the Act.

> In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily.  As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed – **the capacity to dial numbers without human intervention**.
>
> …
>
> We believe the purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress.

*In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at 14091 (emphasis added).  Thus, to determine whether a given dialer is a predictive dialing system, and therefore an automated telephone dialing system under the TCPA, the primary consideration under the FCC order is whether human intervention is required at the point in time at which the number is dialed.  *Walker v. Transworld Sys., Inc.*, No. 8:14-CV-588-T-30MAP, 2015 WL 631390, at *3 (M.D. Fla. Feb. 13, 2015).

The Mercury Predictive Dialer (henceforth, the "MPD") utilized by NRA has three modes, one of which is "predictive mode."  According to NRA's CEO, Steven Kusic ("Kusic"), in predictive mode the MPD employs "an algorithm that paces the productivity of the collector or teams of collectors with the workload and the results of that workload."  (Doc. 32-5 (henceforth, "Kusic Depo.") at 66).  Kusic also testified that in predictive mode, the MPD is intended to automatically drop any calls that are answered by an answering machine or result in busy signals. (Kusic Depo. at 48, 50).

Charlene Sarver. the assistant director of dialer and collections for NRA (Doc. 32-4 at 10), creates debt collection "campaigns" made up of various collection accounts and their associated phone numbers, to be called by NRA's collectors.  (Kusic Depo. at 45-46).  These campaigns are stored in NRA's customer information system ("CIS").  (Kusic Depo. at 32).  The CIS sends accounts to the MPD, which makes the calls.  (Kusic Depo. at 32-33).

Sarver testified that the two campaigns that resulted in calls to Brown – the GOVMED and Safety Campaigns – were predictive dialer campaigns, meaning that when calls were made as part of those campaigns, they were made in predictive mode.  (Doc. 32-4 at 19).  At her deposition, Sarver testified that predictive mode calls require no intervention by the collectors at the time the number is dialed:

> Q. Now, the collectors at NRA Group, how do collectors know that an outbound call has been made by this particular dialer in predictive mode?
>
> A. When the dialer dials an account for them, the account will populate on their screen. So basically they have to log into the dialer so that the dialer knows that it wants them to – they want it to make a call for them. They initiate – they'll tell it that they're logged in ready for a call and when it gets one, it will actually populate on their screen. So they know a call's there because it pops up on their screen.
>
> Q. Do the collectors know that a phone number is actually being dialed right at that time or is the first time that they know that a call has been made is when it pops up on the screen?
>
> A. When it pops up on their screen.
>
> …
>
> Q. So, really, the only time that a collector knows that a call has been made by this dialer in predictive mode is when the call has already been made and the call has actually answered by the person called?
>
> A. Yes.

(Doc. 32-4 at 21-23).

NRA argues that certain human intervention preceding the dialing precludes the MPD from being classified as a predictive dialer. In particular, NRA points to the following snippets of testimony from its CEO, Kusic:

> The collector logs into the software, into our customer information system, and the customer information system, if they're requesting to use the dialer, will send the dialer accounts to be called based upon them requesting for an account.
>
> …
>
> They would sign into the customer information system and if they were utilizing the dialer, they would also log into the dialer.
>
> …

> The collector has to specify what calls he wants to make, and then it will submit those accounts to the dialer.
>
> …
>
> The accounts are not loaded into the dialer until the collector requests the accounts to be called.

(Kusic Depo. at 32-34).   In addition, NRA points to Kusic's testimony that the MPD only initiates calls "based upon what the collector requests" and that the request that the collector must make prior to the placement of any dialer assisted call is done manually.   (Kusic Depo. at 38)

This testimony is not enough to establish the existence of a genuine issue of material fact as to whether the calls to Brown were made by a predictive dialer.   None of Kusic's testimony contradicts that of Sarver, who establishes that when the MPD is operating in predictive mode – as it was when Brown was called – no human intervention occurs at the point where the call is dialed.   Other testimony from Kusic is consistent with this testimony from Sarver.   For example, Kusic testified that when the MPD is operating in predictive mode and a call is picked up by an answering machine, the MPD "will normally drop the call and go to the next account."   (Kusic Depo. at 48).   When this occurs, the collector does not intervene to have the MPD make another call:

> Q.   And if the call is dropped, then the dialer would just move on to the next number or next account and call that number?
>
> A.   Whatever the collector has requested to be next in the series.

(Kusic Depot at 50).

Kusic's testimony establishes that there is *some* human intervention prior to calls being made by the MPD in predictive mode.   Despite this, it is clear that such calls are made automatically, which is the primary consideration according to the FCC.   So far as the evidence demonstrates, once an NRA collector logs in and makes a request, the MPD starts dialing from an

existing list of numbers; any busy signals or answering machine calls are dropped, and the next number on the list is called, all without human intervention, until a person finally answers and is connected to a collector (assuming one is available).   This minimal amount of human intervention is entirely consistent with the FCC's description of predictive dialers as devices that "store pre-preprogrammed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiencies for call centers."   18 F.C.C. Rcd. at 14090.

NRA has failed to establish the existence of a genuine issue of material fact as to whether the 35 calls to Brown were made by an automatic telephone dialing system, as defined in the TCPA.   As this was the only element disputed by NRA, the Court concludes that Brown is entitled to summary judgment as to liability on her TCPA claim.

Brown also seeks summary judgment that the NRA's calls constituted knowing and willful violations of the TCPA, entitling her to treble damages.   A finding of a willful or knowing violation requires a finding that the defendant knew it was engaging in conduct that violated the statute.   *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("For example, to violate section 227(b)(1)(A)(i), a defendant must know that he is using an 'automatic telephone dialing system' to place a 'call,' and that the call is directed toward an 'emergency' line.").   While NRA's claim that it was unaware that the Mercury Predictive Dialer was in fact a predictive dialer seems dubious, Brown has provided no evidence to the contrary.   The standard described in *Lary* is in exacting one, and viewing the facts in the light most favorable to NRA, there is a genuine issue of material fact as to whether NRA knew it was using an automatic telephone dialing system to place the calls to Brown's number.   Summary judgment is therefore not warranted as to this issue.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 23) filed by Plaintiff Debra Brown is **GRANTED IN PART AND DENIED IN PART**, as set forth above.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 5, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party